***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and, accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter;
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act;
3. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties;
4. That insurance coverage existed on date of injury;
5. That Plaintiff sustained an admittedly compensable injury to her back on May 13, 2009;
6. That an employment relationship existed between the Plaintiff and the Employer-Defendant during some or all of the time period of the previous paragraph;
7. That Plaintiff's average weekly wage was $347.61;
8. The issues for hearing are:
 a. Is Plaintiff disabled, and therefore entitled to wage benefits, as defined by the North Carolina Workers' Compensation Act?
 b. If so, for what time periods is she so entitled?
 c. If Plaintiff is deemed disabled for any period of time, has she unjustifiably refused suitable employment?
 *********** RULING ON MOTION
On February 18, 2011, Defendants, through then Counsel of Record, Matthew Flatow, filed their Form 44 and brief to the Full Commission. On March 11, 2011, Plaintiff filed her *Page 3 
response brief to the Full Commission. On May 6, 2011, Defendants, through their new Counsel of Record, Will Smith, filed "Defendants' Response to Plaintiff's Brief." On May 9, 2011, Plaintiff filed her Motion to Strike and Motion for Sanctions pursuant to Rules 609, 701 and 802 of the Workers' Compensation Rules of the North Carolina Industrial Commission, requesting that the Full Commission strike Defendants' brief filed May 6, 2011 from the record and assess Defendants sanctions, including attorney's fees, for their refusal to comply with Rule 701.
For good cause shown, Plaintiff's motion to strike Defendants' May 6, 2011 brief from the record is hereby GRANTED. Plaintiff's motion for sanctions is hereby DENIED.
 ***********
Based upon all of the competent, credible evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is 43 years old, having a date of birth of June 3, 1968. Plaintiff graduated from high school and has worked in a factory setting most of her adult life.
2. Plaintiff sustained a compensable injury to her back on May 13, 2009 while working for Defendant-Employer. She injured her back when a heavy cart she was pulling became stuck, causing her to lose her balance and fall on the concrete floor. Plaintiff struck her tailbone and low back when she fell.
3. Defendant-Employer completed an Industrial Commission Form 19 on May 15, 2009, the day after Plaintiff's accident. Plaintiff completed and filed an Industrial Commission Form 18 on June 11, 2009. After Defendants failed to recognize her claim, Plaintiff filed an Industrial Commission Form 33 on June 17, 2009. Defendants filed an Industrial Commission Form 60 on June 30, 2009. On this form, Defendants admitted Plaintiff's right to compensation *Page 4 
@but denied that she was entitled to disability compensation on the basis that she refused an offer of light duty work.
4. Defendants referred Plaintiff for medical treatment at PrimeCare of North Point where she was initially seen on May 14, 2009. Plaintiff was diagnosed with contusions and swelling to her low back. The examining medical provider ordered x-rays and prescribed medication. Plaintiff was also assigned sedentary work restrictions through May 21, 2009. Plaintiff returned to PrimeCare on May 17, 2009 and was diagnosed with the same problems, prescribed additional medication and physical therapy, and assigned the same work restrictions through May 24, 2009.
5. On May 19, 2009, Plaintiff's symptoms grew so bad that she went to Forsyth Medical Center's Emergency Department. There, Plaintiff was diagnosed with thoracic and lumbar strain. Plaintiff was written out of work on the day of her visit and the next, and was instructed to follow up with her family physician in seven days if she was not better.
6. Plaintiff presented to Salem Family Practice on May 20, 2009, where she was again diagnosed with a lumbar strain status post fall. She was prescribed medication and was encouraged to undergo physical therapy. Plaintiff was also taken out of work through May 26, 2009.
7. Defendant-Employer sent a letter to Plaintiff on May 19, 2009 offering her a position of employment effective May 21, 2009 which Defendants contend was within Plaintiff's assigned work restrictions. This May 19, 2009 letter was the first time Defendants offered Plaintiff any position of employment following her work accident. Plaintiff declined the job on May 20, 2009 because she had been medically restricted from working by her doctor. *Page 5 
Defendants offered no testimonial evidence to support that the alleged job offered was actually within Plaintiff's then current work restrictions.
8. Plaintiff returned to work for Defendant-Employer on May 28, 2009 despite her ongoing back pain. Her return to work greatly exacerbated her pain and caused the pain to begin radiating into both legs, thereby making it difficult for Plaintiff to walk. As a result, Plaintiff returned to PrimeCare on May 29, 2009. Following her examination, Plaintiff was again prescribed medications and physical therapy. She was also placed back on sedentary work restrictions.
9. Plaintiff returned to PrimeCare on June 2, 2009 because her back pain had continued to worsen, reportedly secondary to her return to work efforts. Specifically, Plaintiff reported that she tried working for three days but could not do so because of the pain she was suffering. Plaintiff was returned to sedentary work restrictions and was referred to an orthopedic specialist.
10. Dr. Claudia Campos, with Orthopaedic Specialists of the Carolinas, examined Plaintiff on June 5, 2009. Dr. Campos ordered an MRI and continued physical therapy and placed Plaintiff on light duty work restrictions of no lifting over 20 pounds, and no bending, twisting, climbing or squatting.
11. An MRI performed on June 10, 2009 revealed disc bulging at L3-4 and L4-5, with spinal canal compromise and a disc protrusion at L5-S1 with abutment of the S1 nerve roots.
12. On June 16, 2009, Dr. Campos continued the light duty work restrictions she gave Plaintiff on June 5, 2009.
13. On July 16, 2009, Defendant-Employer sent a letter to Plaintiff offering her a position of employment sanding parts effective July 20, 2009. The position involved lifting *Page 6 
parts weighing a maximum of 12 pounds while standing. Plaintiff received Defendant-Employer's July 16, 2009 letter, but decided not to return to work in the offered position because she did not think she could perform the job, and did not think the job would comply with her restrictions.
14. The Full Commission finds that the position offered to Plaintiff in Defendant-Employer's July 16, 2009 letter constituted suitable employment within the restrictions imposed upon Plaintiff by Dr. Campos.
15. Plaintiff's voluntary refusal to perform the job offered to her in Defendant-Employer's July 16, 2009 letter constitutes an unjustified refusal to accept suitable employment.
16. Plaintiff continued treating with Dr. Campos' practice through September 2, 2009. During this period, Dr. Campos' office declined to fill medication prescriptions for Plaintiff because they believed she was drug seeking.
17. Defendants subsequently referred Plaintiff to Dr. Dahari Brooks at Greensboro Orthopaedic Center. Dr. Brooks was the authorized treating physician selected by Defendants.
18. Plaintiff was originally scheduled to see Dr. Brooks on November 24, 2009. She did not, however, bring her films to the appointment as she had not been instructed to do so, and, as a result, her appointment was postponed until January 18, 2010.
19. Following his January 18, 2010 examination of Plaintiff, Dr. Brooks noted that she was "a very pleasant woman who appears her stated age in obvious distress." He noted that Plaintiff had difficulty standing, sitting, and walking. He also noted that her radicular symptoms on the left were consistent with an L5-S1 distribution. Dr. Brooks recommended that Plaintiff undergo a CT scan, injections, and possible fusion surgery. He also took Plaintiff out of work "because of her severe pain and until she had a chance to obtain the CT scan." *Page 7 
20. Plaintiff returned to Dr. Brooks on February 8, 2010 after she had undergone the CT scan. Dr. Brooks interpreted the scan as showing degenerative changes at L3 through S1. He recommended injection therapy and prescribed medication. He also allowed her to return to work lifting no more than 10 pounds and working no more than six hours a day. Defendants did not offer Plaintiff a job.
21. Plaintiff continued treating at Greensboro Orthopaedic Center where she underwent a steroid injection, administered by Dr. Richard Ramos, on March 5, 2010.
22. Dr. Ramos noted on March 9, 2010 that the injection did not help Plaintiff and that Plaintiff "appears to be severely disabled." He continued her medication and returned her to Dr. Brooks.
23. On March 15, 2010, Dr. Brooks recommended that Plaintiff begin pain medical management with Dr. Ramos. He also ordered another MRI, modified her medications, and released her to return to work for no more than four hours a day, with no lifting of more than one pound, no bending, stooping, or squatting, no prolonged sitting or standing, and no overhead work.
24. On March 19, 2010, Plaintiff, through her attorney, wrote to counsel for Defendants and asked whether Defendant-Employer had a job for Plaintiff within Dr. Brooks' assigned restrictions. Defendants' counsel advised by letter dated March 25, 2010 that Defendant-Employer believed that it had a job within Dr. Brooks' restrictions. By letter dated March 26, 2010, Plaintiff through counsel asked Defendants for a job description for the purported job. Defendants never provided a job description and never again offered Plaintiff work. Plaintiff testified that she would have attempted the job if she knew what it was and if it was within her restrictions. *Page 8 
25. Plaintiff underwent an MRI on March 23, 2010. It showed findings consistent with the prior MRI according to Dr. Brooks' April 5, 2010 dictation. During his examination of Plaintiff on that date, Dr. Brooks continued to note that Plaintiff was experiencing "horrific back pain." As a result, he recommended that she undergo a discogram and then fusion surgery. He stated that if she decided not to proceed with surgery, that he would recommend chronic pain management and deem her to be at maximum medical improvement.
26. On May 10, 2010, Dr. Brooks opined that Plaintiff had reached maximum medical improvement. He assigned a 10% permanent partial impairment rating to her back. He also assigned permanent work restrictions of no lifting more than one pound, no bending, stooping, squatting, no prolonged standing or sitting, and no overhead work. The Full Commission finds as fact that Plaintiff has been at maximum medical improvement since May 10, 2010.
27. Defendants have not offered Plaintiff a job within the permanent restrictions assigned by Dr. Brooks. Plaintiff testified that she has been looking for work consistently but without success. She testified that no one will hire her with her permanent restrictions.
28. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff was totally disabled as a result of her compensable injury for the periods from May 19, 2009 through May 27, 2009, from June 1, 2009 through July 19, 2009 and from January 18, 2010 through the present and ongoing.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW *Page 9 
1. Plaintiff sustained a compensable injury by accident on May 13, 2009. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was totally disabled for the periods from May 19, 2009 through May 27, 2009, from June 1, 2009 through July 19, 2009 and from January 18, 2010 through the present and ongoing. N.C. Gen. Stat. § 97-29; see also Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Plaintiff's refusal to accept the sanding position offered by Defendant-Employer in its July 16, 2009 letter, which constituted suitable employment within the restrictions imposed upon Plaintiff by Dr. Campos, was unjustified. Therefore, Plaintiff's right to temporary total disability is suspended as of July 20, 2009 and continuing through January 17, 2010. N.C. Gen. Stat. § 97-32.
4. Plaintiff is entitled to temporary total disability compensation for the periods from May 19, 2009 through May 27, 2009, from June 1, 2009 through July 19, 2009 and from January 18, 2010 through the present and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to receive and Defendants are hereby ordered to pay temporary total disability compensation for the periods from May 19, 2009 through May 27, 2009, from June 1, 2009 through July 19, 2009 and from January 18, 2010 through the present and continuing until further Order of the Commission. *Page 10 
2. Plaintiff's attorney is hereby awarded a reasonable fee of 25% of all accrued and ongoing disability compensation awarded Plaintiff. Of the continuing disability compensation, Defendants are ordered to send every fourth compensation check directly to Plaintiff's attorney.
3. Defendants shall pay the costs.
This the ___ day of June, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1